

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

PP:SP/VC                                              *271 Cadman Plaza East*
F. #2023R00389                                        *Brooklyn, New York 11201*


April 24, 2025


By ECF


The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Chowdhury et al.
                Criminal Docket No. 23-278 (S-1) (NRM)

Dear Judge Morrison:

        The government respectfully submits this letter in response to defendant Sultana Razia's request to modify her bond conditions.  (ECF No. 263.)  The defendant requests that the Court remove both her curfew and electronic monitoring.  For the reasons set forth below, the government opposes any modification to the defendant's bond conditions.

        I.        Procedural Background and Defendant's Current Bond Conditions

        The defendant was indicted on January 11, 2024, and charged with kidnapping and conspiracy to kidnap, in violation of Title 18, United States Code, Sections 1201(a)(1), 1201(c) and 2.  (ECF No. 62.)  As alleged in the Superseding Indictment, on March 27, 2023, the victim, John Doe-1, was whisked off a public street and forced into an SUV.  Once inside the SUV, John Doe-1 was beaten by his kidnappers as the SUV drove around various neighborhoods in Queens for hours.  During this approximately thirteen-hour ordeal, John Doe-1 was subjected to threats, beatings, and sexual humiliation, forced to stand naked in a residential neighborhood while co-defendants filmed him on their cell phones.  The defendant actively participated in John Doe-1's kidnapping by arriving to the scene where John Doe-1 was being held, beating him with an object, and recording John Doe-1's kidnapping.

        After being assaulted and shuttled around various neighborhoods in Queens at his captors' whims, the last recollection John Doe-1 had of his terrifying night was begging his kidnappers for water and drinking a bitter beverage.  The next memory John Doe-1 had was waking up in a local hospital, where he learned that a car had dropped him off and left; medical tests later confirmed that the John Doe-1 had been drugged.

The defendant was arraigned on the Superseding Indictment on January 11, 2024, before the Honorable Joseph A. Marutollo, United States Magistrate Judge for the Eastern District of New York. The government consented to the defendant's release under home confinement, a substantial bond secured by property and location monitoring. (ECF Nos. 81, 82.) On August 14, 2024, the defendant's bond conditions were modified to a curfew and electronic monitoring, with the government and Pretrial Service's consent. The government consented to this request after learning of the defendant's role as a regular caregiver for an elderly relative (who does not live with the defendant) and consulting with Pretrial Services to ensure that adherence to the curfew would still be enforced by electronic location monitoring.

II.      The Defendant's Involvement and the Charged Offense
        Weigh Against Any Modification to the Defendant's Bond

Counsel for the defendant argues that because the defendant has been compliant with her bond conditions so far, she should be afforded the requested relief. However, a modification of bond restrictions is appropriate only where the defendant can show that there has been a change in circumstances. See, e.g., United States v. Dzhamgarova, No. 1:21-CR-58-MKV, 2021 WL 3113036, at *1 (S.D.N.Y. July 21, 2021) (denying the defendant's request to modify bond conditions based on a lack of any change in circumstances); United States v. Falcetti, No. 02 CR 140 (ILG), 2002 WL 31921179, at *1 (E.D.N.Y. Oct. 31, 2002) (same). The defendant's request does not identify any change in her circumstances that support this court revisiting the bond conditions in this matter. Instead, the defendant's only justification for the requested relief is her compliance with Pretrial Services' directives—which is expected, at a minimum, as a requirement to her release on bond.

More importantly, the defendant's dangerousness to John Doe-1 is clear: instead of seeking some means to stop the co-defendants or help the victim—the defendant cruelly went to the scene to participate in the assault and humiliation of John Doe-1, and with her own hands beat him with a broom. Prior to arriving to the kidnapping, co-defendant Abu Chowdhury contacted the defendant through a video call to show her John Doe-1, kidnapped and stripped naked. John Doe-1 heard the defendant ask co-defendant Abu Chowdhury to hold the phone steady so she could screen record the defenseless victim's humiliation. Knowing the terrible events that were taking place—instead of seeking some means to stop them or help the victim—the defendant cruelly went to the scene to participate in the assault and humiliation of John Doe-1 in-person. Text messages sent to Abu Chowdhury indicate that the defendant later posted a video of John Doe-1 from the kidnapping to social media with an emoji of a face laughing with tears and the words "mental health awareness month" captioned across the video. This conduct shows the danger she presents to John Doe-1 in particular and the community at large, which Judge Marutollo deemed appropriately addressed by home confinement and location monitoring.

Furthermore, the defendant poses a significant risk of flight because the evidence implicating her is strong and persuasive. In addition to the evidence described above, cell-site data places the defendant in the same location as that corresponding with metadata captured in a video of John Doe-1's kidnapping, and cell-site data also places the defendant with co-defendant Abu Chowdhury and other co-defendants during John Doe-1's kidnapping. Cellphone search returns also corroborate that the defendant exchanged multiple WhatsApp phone calls and text messages with co-defendant Abu Chowdhury during the kidnapping. Given the overwhelming

2

evidence of the defendant's guilt and the 121 – 151 months of imprisonment she faces upon conviction, the defendant's current bond conditions must be maintained to prevent her flight.

III.   The Current Bond Conditions Protect Against Any Possible Continued Witness Intimidation

The current bond conditions also should be maintained to prevent further witness intimidation against John Doe-1, who has already been subjected to intimidation within the community in connection with this case. In particular, an audio recording on co-defendant Chowdhury's cellphone shows that co-defendant Chowdhury boasted that he had someone "take care of" something for him; something "important" that might have otherwise required the defendant to "get a lawyer." Notably, law enforcement further found in co-defendant Chowdhury's phone a photo of an NYPD form that John Doe-1 had signed declining to pursue the complaint he had initially filed in relation to his kidnapping. Further, shortly after his kidnapping and his initial report to law enforcement of that fact, a close relative of John Doe-1 was approached on the street, asked if they were a close relative of John Doe-1, and punched in the face upon confirmation. Although the government is not alleging that the defendant initiated this intimidation, the evidence shows that the risk of witness intimidation in this case is real and significant. For these reasons, the current bond conditions restrict the defendant's exposure to the community and John Doe-1 by confining her to a curfew and electronic monitoring, and those conditions should not be loosened.

The descriptions of John Doe-1 in the defendant's severance motion also show that she poses a danger to the community and John Doe-1:

> Rather, he was a prolific publicity-seeking gadfly in the Bengali community who trolled Abu Chowdhury and others on social media, nastily and repeatedly defaming them. He then issued a specific, public challenge on Tik Tok on the night in question for Abu Chowdhury to fight him. Apparently, Chowdhury decided to accept the challenge and teach this annoying, hateful man a lesson, and forcefully brought him to a public shaming and airing of grievances at which Sultana, a housewife whom Victim 1 had falsely and publicly accused of theft and sexual misconduct, amid other spewings, was one of a number of community members, also objects of this man's ravings, who were allegedly summoned by Abu Chowdhury to this event.

(ECF No. 259 at 1.) This language suggests that the defendant remains deeply resentful and angry at John Doe-1 to such an extent that loosening the current bond restrictions would pose real risks to witness safety and intimidation. The government has reasonably consented to a modification of the defendant's prior bond conditions to allow for a curfew rather than home detention. The defendant's request, to remove the curfew and electronic monitoring requirements, would leave this defendant unfettered without any supervision. In light of her danger to the community and the significant risk of flight, such a drastic change is inappropriate.

IV.    Conclusion

For the reasons above, the government respectfully requests that the Court deny the defendant's request to modify her bond conditions.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:    \_\_\_\_\_/s/_____
Stephanie Pak
Vincent Chiappini
Assistant U.S. Attorneys
(718) 254-6064/6299

4