

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| ADG:SP/VC/JV | *271 Cadman Plaza East* |
| F. #2023R00389 | *Brooklyn, New York 11201* |

July 20, 2026

<u>By ECF</u>

The Honorable Nina R. Morrison
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Syed Rubel Ahmed et al.
> Criminal Docket No. 23-278 (NRM)

Dear Judge Morrison:

The government writes in advance of the defendants Sultana Razia and Syed Rubel Ahmed's July 23, 2026 detention hearing. The government respectfully requests that the Court immediately remand the defendants pending sentencing. As explained further below, remand is mandatory where, as here, the defendants have been convicted of crimes for which the maximum sentence is life. See 18 U.S.C. § 3143(a)(2). The limited exceptions to this mandatory remand requirement do not apply here.

> I.    Applicable Law

The Bail Reform Act sets forth rules governing whether and when defendants convicted of federal offenses may be released pending their sentencing. Under 18 U.S.C. § 3143(a)(2), remand pending sentencing is mandatory after convictions for certain offenses. See 18 U.S.C. § 3143(a)(2) ("The judicial officer <u>shall</u> order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained . . . ." (emphasis added)); <u>see also</u> <u>United States v. Abuhamra</u>, 389 F.3d 309, 319 (2d Cir. 2004) (§ 3143(a) "creates no general expectation of post-verdict liberty" while further "establish[ing] a presumption in favor of detention"). The offenses triggering such mandatory remand are enumerated at 18 U.S.C. § 3142(f)(1)(A)-(C), which include "crime[s] of violence" and "offense[s] for which the maximum sentence is life imprisonment or death." <u>See</u> <u>id.</u> § 3142(f)(1)(A)-(B). This remand must be immediate because "subsection 3143(a) bec[omes] applicable the moment the jury verdict was

'returned by the jury to the judge in open court.'" United States v. Bloomer, 967 F.2d 761, 764 (2d Cir. 1992) (quoting Fed. R. Crim. P. 31(a)).[1]

There are limited exceptions to such mandatory remand. There is a two-part exception to mandatory remand in § 3143(a)(2) itself; both requirements must be satisfied to excuse the mandatory remand requirement. A defendant may satisfy the first requirement in one of two ways: either "the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted" or "an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person." 18 U.S.C. § 3143(a)(2)(A). The second requirement demands that "the judicial officer find[] by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." Id. § 3143(a)(2)(B). This second requirement also has two parts because it requires a finding, by clear and convincing evidence, both that the defendant is not likely to flee and that he or she is not likely a danger to any other person or the community. See id.

There is also a separate, narrow exception to mandatory remand for "exceptional reasons" under 18 U.S.C. § 3145(c). In order to be released under this exception, a defendant must satisfy two separate steps. First, the defendant must be able to satisfy the conditions of release set forth in 18 U.S.C. § 3143(a)(1). See id. § 3145(c). That provision requires the defendant to prove "by clear and convincing evidence that [he or she] is not likely to flee or pose a danger to the safety of any other person or the community if released." Id. § 3143(a)(1). Second, the court must find that "that there are exceptional reasons why [the defendant's] detention would not be appropriate." Id. § 3145(c). The Second Circuit has held that this exception is narrow, noting that "[e]xceptional reasons exist under the second prong where there is a unique combination of circumstances giving rise to situations that are out of the ordinary." United States v. Colon, 821 F. App'x 39, 41 (2d Cir. 2020) (quoting United States v. DiSomma, 951 F.2d 494, 497 (2d Cir. 1991)) (internal quotation marks omitted) (emphasis added).

The statute's "exceptional reasons" requirement is a demanding test that means what it says. For example, "going to school, being employed, or being a first-time offender, either separately or in combination" are not exceptional reasons. United States v. Lea, 360 F.3d 401, 403-04 (2d Cir. 2004). Nor are there exceptional reasons, or circumstances, where a defendant "supports his family, is employed, and was in compliance with his conditions of supervision." Colon, 821 F. App'x at 42. Similarly, the obligations of parenting, even for children in very difficult circumstances, do not constitute exceptional reasons. See United States v. Sabhnani, 529 F. Supp. 2d 377, 382 (E.D.N.Y. 2007) ("The Court further finds that the circumstances advanced by [the defendant] are purely personal and do not rise to the level of exceptional circumstances that would warrant release. Regrettably, mothers go to prison and fathers have to step up. Incarceration is always associated with severe familial inconvenience."); United States v. Lippold, 175 F. Supp. 2d 537, 540-41 (S.D.N.Y. 2001) (finding that a defendant's need to care for three young children, including a seven-month-old infant with Bell's Palsy, and to discharge employment responsibilities were not exceptional reasons to warrant release pending sentencing); cf. United States v. Madrigal, 331 F.3d 258, 260 (2d Cir. 2003) (finding in context of pre-Booker

---

[1] Although the Bloomer court purports to quote Rule 32(a), it appears to be quoting an earlier version of Federal Rule of Criminal Procedure 31(a), which reads in its current version: "The jury must return its verdict to a judge in open court. The verdict must be unanimous."

downward departure that for defendant who had six children, including one under the age of 18 and suffering from a learning disability, "[u]nfortunate as the circumstances . . . are, they are not 'extraordinary,'" but rather "the common collateral damage of imprisonment"). Likewise, the Second Circuit has affirmed that a defendant's advanced age and a lengthy delay between offense conduct and jury verdict are not exceptional reasons. See United States v. Romanello, No. 23-8049, 2024 WL 676860, at *1-2 (2d Cir. Feb. 20, 2024); see also id. at *1 ("[D]istrict courts have found that 'purely personal circumstances' do not constitute exceptional reasons." (quoting United States v. Luciano, No. 97-1015, 1997 WL 120567, at *2 n.1 (2d Cir. Feb. 24, 1997))); see also Luciano, 1997 WL 120567, at *2 n.1 (citing cases where family obligations, medical conditions, risk of retaliation in jail by co-defendants, pregnancy of teenage child, and desire to spend time with two-year-old child before incarceration were all insufficiently exceptional).

## II.    Application

### A.    Detention Is Mandatory

The defendants are both subject to mandatory remand pursuant to § 3143(a)(2) because they were convicted of kidnapping, which is a crime with a maximum sentence of life, see 18 U.S.C. § 1201(a). The limited exception within § 3143(a)(2) does not apply to the defendants because they cannot satisfy either of the exception's two independent requirements. As to the first step, there is not "a substantial likelihood that a motion for acquittal or new trial will be granted," § 3143(a)(2)(A)(i), based on the trial evidence, especially for the reasons articulated by the government at the Rule 29 oral argument, see Trial Tr. at 1980-94, 2006-14, and in its closing argument, see id. at 2376-2442. Nor does the government intend to "recommend[] that no sentence of imprisonment be imposed on" the defendants. § 3143(a)(2)(A)(ii). The defendants' inability to satisfy that first requirement alone is fatal. In any case, for the reasons articulated below, see infra § II.B-C, the defendants also cannot show "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." § 3143(a)(2)(B).

### B.    The Defendants Cannot Prove by Clear and Convincing Evidence That They Are Not Flight Risks

Neither Ahmed nor Razia can prove by clear and convincing evidence that they are not flight risks. Multiple factors incentivize both defendants to flee before sentencing. First, they face significant terms of incarceration, both in terms of the statutory maximum and their U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") ranges. See United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022) ("The prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence."). Kidnapping carries a maximum penalty of life in prison. See 18 U.S.C. § 1201. The government currently estimates that Ahmed's Guidelines range will be 188-235 months and Razia's Guidelines range will be 151-188 months.[2] The

---

[2]    Razia's Guidelines range assumes a Criminal History Category I and offense level of 34 based on kidnapping's base offense level 32 (U.S.S.G. § 2A4.1(a)) and a two-level enhancement for the serious injuries that John Doe-1 sustained (id. § 2A4.1(b)(2)(B)). Ahmed's Guidelines range also assumes a Criminal History Category I. His estimated total offense level is

Government intends to seek terms of incarceration consistent with the Guidelines, giving the defendants a significant incentive to flee. See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that Scali's Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[E]ven if, as a practical matter, Khusanov's maximum sentence exposure were only 15, rather than 30, years' imprisonment, that would still be sufficient to provide him with a strong incentive to flee."); United States v. Motovich, No. 21-CR-497 (WFK), 2025 WL 2300265, at *2 (E.D.N.Y. Aug. 8, 2025) (holding that a defendant requesting only "several hours" of temporary release, secured by a $20 million bond, was still a flight risk given that the defendant faces a "significant term of imprisonment"); United States v. Williams, No. 20-CR-293 (WFK), 2020 WL 4719982, at *2 (E.D.N.Y. Aug. 13, 2020) (Guidelines range of "92 to 115 months' imprisonment" gave defendant "a strong incentive to flee").

Second, both defendants have extensive foreign ties which could facilitate their absconding. Both emigrated to America from Bangladesh, and trial testimony, evidence, and defense counsel's statements confirmed Razia's close family ties to Bangladesh, see, e.g., Trial Tr. at 2535-36 (Razia summation discussing calls to Bangladesh during the kidnapping). Notably, Bangladesh does not have an extradition treaty with the United States. The lack of such an agreement weighs in favor of finding the defendants to be flight risks. See United States v. Amanat, 454 F. Supp. 3d 358, 362 (S.D.N.Y. 2020) ("The Court cannot find by 'clear and convincing evidence' that Defendants do not pose a flight risk. . . . [Defendants] have substantial connections with Dubai – a country with which the United States does not have an extradition treaty."). Additionally, both defendants' familial ties in Bangladesh increase the risk they will abscond prior to sentencing. See Sabhnani, 582 F. Supp. 2d at 381 ("[T]he Court has serious concerns . . . [defendant] has substantial ties to various countries throughout the world, as well as family members who reside abroad.").

Third, with respect to Ahmed in particular, his perjury during the trial indicates his dishonesty and a disregard for the law and the Court's authority and thus an increased risk of flight. Substantial case law supports remand where a defendant has demonstrated dishonesty. See United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018) ("[T]he court reasonably found that Scali's perjury conviction makes it difficult to trust his promise that he will not flee."); United States v. LaFontaine, 210 F.3d 125, 135 n.6 (2d Cir. 2000) (remand appropriate where "LaFontaine had previously disregarded court orders . . . and her latest violation of the trial process, as demonstrated by her perjury, would tend to suggest that she would do so again."); United States v. Wang, No. 23-CR-118 (AT), 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023) (denying bail pretrial in fraud prosecution in light of "past obstructive conduct in this case"); United States v. Rahmankulov, No. 21-CR-653 (RA), 2023 WL 3479696, at *2 (S.D.N.Y. May 16, 2023) (denying bail following money laundering conviction and noting that defendant's demonstrated dishonesty heightened risk of flight); United States v. Nicolo, 706 F. Supp. 2d 330, 334 (W.D.N.Y. 2010) (defendant's dishonest conduct demonstrates that he "could not be trusted to abide by any conditions that might be set on his release"); United States v. Nouri, No. 07-CR-1029 (DC), 2009 WL 2924334, at *2 (S.D.N.Y. Sept. 8, 2009) (denying reconsideration of decision to remand following fraud

---

36, two levels higher than Razia's, because of a two-level obstruction of justice enhancement based on his false sworn testimony at trial (id. § 3C1.1).

4

conviction; in light of fraudulent and obstructive conduct proven at trial and prior dishonesty with the court).

That case law applies here because Ahmed perjured himself during the trial. While multiple statements were dishonest, the government highlights two here for their brazenness. First, Ahmed testified that the arms and hands visible in GX 350J-S at 3:55-4:12 attacking John Doe-1 were not his. See Trial Tr. at 2306-08. The eyewitness Anzu Khan directly contradicted this. See id. at 1288. Moreover, the defendant himself acknowledged that at the time he was standing by the rear passenger door, from which those arms came (id. at 2304); that this was the moment when he "wanted to slap" John Doe-1 (id. at 2308); and that multiple individuals shouted "Rubel, don't beat him" at the very time those hands and arms attacked John Doe-1 (id. at 2307). Ahmed's defense counsel on re-direct examination gave him an opportunity to walk back this obvious lie, but the defendant refused. See id. at 2356-57. Second, Ahmed testified that in his post-kidnapping phone call with Razia (GX 350Q-S), he was just parroting words that Abu Chowdhury fed to him: "Abu talks and tells me what to say." Trial Tr. at 2336; see also id. at 2331-32, 2336-37, 2338. This was a lie. With one exception, Abu Chowdhury's voice is never heard in the video, even though he was recording the video and thus closer to the phone's microphone than Ahmed himself. At one point, Ahmed claimed to hear Abu Chowdhury's whispers in GX 350Q-S when none were audible. See Trial Tr. at 2338. Moreover, Ahmed can be repeatedly heard speaking quickly and emotionally, and it is absurd to claim that in those instances, he was merely regurgitating lines fed to him by Abu Chowdhury. See, e.g., GX 350Q-S at 3:12-3:31. The marked contrast between the one instance in which Abu Chowdhury did whisper to Ahmed and the rest of the video demonstrates the dishonesty of Ahmed's claim. As explained by Anzu Khan and heard in GX 350Q-S, in that instance, a phone beeped (indicating that it was muted), another voice (i.e., Abu Chowdhury's) was clearly heard, and the phone beeped again (indicating that it was unmuted). See Trial Tr. at 1366; GX 350Q-S (2:20-2:35).[3]

> C. The Defendants Cannot Prove by Clear and Convincing Evidence That They Do Not Pose a Danger to the Community

The Court also cannot find by "clear and convincing" evidence that either defendant does not "pose a danger to any other person or the community" because of the danger that they pose to John Doe-1. 18 U.S.C. § 3143(a)(2)(B). Both defendants were accused of physically assaulting John Doe-1 at trial by John Doe-1 and eyewitness Anzu Khan. The defendants' past commission of violence against John Doe-1 shows that they are obviously a danger to him. See United States v. Rodriguez, 950 F.2d 85, 89 (2d Cir. 1991) ("[A] prior record of violence eases the government's burden of showing dangerousness."). Moreover, John Doe-1 testified against them at trial, and his testimony led to their conviction and likely substantial imprisonment. Their

---

[3]     In one other instance, Shahed Alom whispers to Ahmed during the call. See Trial Tr. at 1367; GX 350Q-S at 5:50-5:58. During that instance, too, one can hear the phone beep before and after the whisper, consistent with muting the phone for the whispered message, and utterly inconsistent with Ahmed's claim that Abu was otherwise directing his words during the call.

conviction and John Doe-1's testimony against them have likely increased their animus toward John Doe-1 and thus the danger that they pose to him.

Ahmed assaulted and threatened John Doe-1 during the kidnapping. Anzu Khan testified that Ahmed punched John Doe-1 and threatened John Doe-1 with multiple objects. See Trial Tr. at 1226-27, 1230. John Doe-1 testified that Ahmed "hit [him] and beat [him] with pliers" and "threatened to kill [him]." Id. at 823. Video evidence showed Ahmed lunging into the backseat of a vehicle to attack the kidnapped and vulnerable John Doe-1. See GX 350J-S. The same video also showed him threatening to kill John Doe-1. See id.

Razia has twice assaulted John Doe-1. Both John Doe-1 and Khan testified that Razia attacked John Doe-1 during the kidnapping. See Trial Tr. at 940-50 (Ahmed), 1300-04 (Khan). Razia also brought two men to the kidnapping, who also attacked John Doe-1. See, e.g., id. at 1292. In addition to her attack during the kidnapping, another video (GX 205, not admitted at trial but made available to the Court) depicts Razia's alarming prior assault of John Doe-1 at his own birthday party. In the video John Doe-1 is seated. Birthday decorations can be seen in the opening frames. Razia stands over John Doe-1 and thrashes his face and head repeatedly with a shoe; she kicks him in the groin; she pulls his hair; and she screams at him throughout. John Doe-1 remains seated throughout and attempts only to cover his face and head from her repeated blows. Because she has assaulted John Doe-1 multiple times in the past, she cannot meet her burden to prove by clear and convincing evidence that she is not a danger to him.

The trial revealed the depth and endurance of Razia's hatred toward John Doe-1. For example, in her post-arrest statement, she discussed receiving a video from Abu Chowdhury. That video call showed John Doe-1 naked and beaten in a driveway at night. See GX 351F. According to her own statements to the FBI, upon receiving that call, she was "so happy for this" because "he deserved this beating." See GX 301C at 2:35. Her happiness in seeing such brutal violence against John Doe-1—compounded by her decision to join and participate in the violence against this victim—demonstrates the depths of her hatred of John Doe-1.[4] Based on the trial testimony, this hatred appears to result from accusations of theft that John Doe-1 made against her as well as alleged online harassment by John Doe-1. The lengthy cross-examination of John Doe-1 about his TikTok profile, and defense counsel's references to the theft and harassment accusations throughout her opening statement and summation, show that those grievances have not dissipated. These grievances already led Razia to assault John Doe-1 twice. His testimony against her at trial, leading to her conviction, could have only increased her hatred for him, increasing the real danger faced by John Doe-1 at the hands of Razia and her associates.

### D. The Defendants Do Not Qualify for Release Under § 3145(c)

The defendants are also not eligible for release pursuant to 18 U.S.C. § 3145(c) for two independent reasons. First, the government is not aware of any "exceptional reasons," id.,

---

[4] The defendant's trial strategy showed no intent to distance herself from these statements. Indeed, in her opening statement, Razia's defense counsel affirmed Razia's reaction to this violence: "Now, was she happy that Abu Chowdhury and his friends messed this guy up and taught him a lesson? Did she think that Dewan deserved it? Absolutely, and understandably so." Trial Tr. at 640 (emphasis added).

justifying their release.  For example, neither family obligations, nor employment, nor a lack of a prior criminal record, nor compliance with existing bond conditions are "exceptional reasons." See supra § I.  In his letter opposing detention, Ahmed cites United States v. Sabhnani, 529 F. Supp. 2d 377, 383 (E.D.N.Y. 2007), to argue that "where a defendant bears sole responsibility for operating a business and has children, the need to arrange business and family affairs and provide emotional support for his children can satisfy the exceptional reasons standard."  ECF No. 619, at 2 (July 20, 2026).  In fact, Sabhnani considered two defendants, a husband and wife.  The wife argued for released based on the purportedly exceptional reasons of "the conditions of her home confinement; care of four children; the need for financial management as well as management of the business; hostility from the community; and her stress and weakened condition following trial." Sabhnani, 529 F. Supp. 2d at 382.  The Court rejected her claim: "The Court further finds that the circumstances advanced by [the wife] are purely personal and do not rise to the level of exceptional circumstances that would warrant release. Regrettably, mothers go to prison and fathers have to step up.  Incarceration always is associated with severe familial inconvenience."  Id.  The court did find, as an alternative ground for release, that the husband could satisfy the exceptional circumstances requirement.  He differed from his wife, however, because he was "solely responsible for operating his business and has various employees who are dependent upon their jobs, salaries and benefits."  Id. at 383.  Here, the government is not aware, and Ahmed has not proffered facts, that employees depend upon him.  Accordingly, he is at best like the wife in Sabhnani, for whom the court found no exceptional reasons.

Without any exceptional reasons, the defendants cannot be released, regardless of whether they are a flight risk or a danger.  Even if one did reach the flight and dangerousness inquiry, however, the defendants cannot meet their burden there either.  See supra § II.B-C; see also Lloyd v. United States, 857 F. App'x 702, 703 (2d Cir. 2021) ("This statutory framework . . . places a plainly substantial burden of proof on the defendant seeking release." (internal quotation marks omitted)).

III.    Conclusion

For the foregoing reasons, the government requests that the Court immediately remand the defendants to custody pending sentencing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/_____
Stephanie Pak
Vincent Chiappini
John Vagelatos
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (NRM) (by ECF)
       All counsel of record (by ECF)

8